Good morning. May it please the Court, I am Tara Hovland, appearing on behalf of Appellant Juan Nava-Calderon. I would like to reserve one minute for rebuttal. There are two issues I will be discussing today. One is insufficiency of the evidence of conspiracy with intent to distribute. The other is insufficiency of the evidence of possession with intent to distribute. The facts are pretty straightforward. The government was using a confidential informant to investigate an alleged drug trafficking organization involving a Mr. Favela. They set up a number of buys culminating in the one which brings us here today, which was the attempted buy of four pounds of methamphetamines on April 28, 2008. There is no doubt in this case that there was a conspiracy to distribute meth. The issue is whether defendants act as a passenger in the car that arrived with the drugs, along with the confidential informant's testimony that he was seen briefly counting the money. You said he arrived as a passenger? Yes. My client, Mr. Nava-Calderon, was a passenger in the white car that arrived with the drugs in the trunk. The confidential informant testified that he saw him briefly count the money that Mr. Favela took outside, and then the three of them, Mr. Martinez, the co-defendant, Mr. Calderon, and Mr. Favela went inside. The government informant was not permitted to go inside, correct? That's correct. Why isn't that sufficient? You have the people, they open up the trunk, they get drugs. Was your client involved in handing over the drugs? No. Actually, there's no evidence that my client ever handled the drugs or even saw the drugs. With the money, yes. Yes. There's evidence that he handled the money. Okay. Now, the drugs were under a flap where the spare tire is held in the trunk. Right. There are no fingerprints found, no connection with my client and the drugs. The only connection with the money was Mr. Favela took a bag out that had the money in it, put it by the trunk, and my guy started leafing through it while Martinez said to the confidential informant, you stay over there, this is what we're doing, and then they went inside. Forgive me. Where's the innocent explanation of that? I mean, you've got drugs being handed, your client's going through helping to count money. Would he just like to do that out in the desert and likes the sound of money? No. I would say, one, there was no drugs being changed hands. There's no evidence about the drugs at this point. I thought the drugs were taken out of the place by the trunk. That was when they executed the search warrant. They found the drugs in the spare tire. All right. So he just pulled out the money. All of the cases that deal with passengers in conspiracy to transport or distribute drugs, they're very similar. You have a passenger that's present with a conspirator. The passenger has knowledge of what's going on, but yet there's nothing to prove that the passenger had the agreement to be involved in the conspiracy or the intent to effectuate the distribution of the drugs. Isn't the standard that as long as any jury, juror, could rationally conclude that the state had shown beyond a reasonable doubt that your client was involved in the conspiracy is sufficient? That's right. And the evidence construed in the light most favorable to the government was present in all of these cases where this court reversed similar convictions under similar facts. Is there any case that was reversed where the individual such your client, you said he was a passenger. I note that Mr. Martinez in his statement said he was a passenger, but and was picked up by Mr. Calderon and taken. I don't know what is in the record that reflects that, frankly, except for Mr. Martinez statement sentencing. But is there any case you're relying upon where there is admittedly these people, and it's in the record of the informant's dealings with this individual who had the house, buying methamphetamines from him in large quantities, had made the range of the drug deal, and then that individual, Mr. Fevella, testified or stated, according to the testimony, there are serious people coming. Right. Once he said, I've got all this money, about $70,000. There are serious people coming, bringing the drugs. We'll have to wait for them. And apparently he called them. And then these two individuals showed up, Mr. Martinez and Mr. Calderon. And the money's produced. And he said, we're going to count the money. And Mr. Martinez helped count the money, and Mr. Calderon did as well. And then Mr. Martinez, Ramirez Martinez, would not let the informant get near it. And then Mr. Fevella took all the other two into the house, which was testified to as a stash house with guns and money in it. And it would seem to me if the stranger showed up, they would not normally admit someone like that into a stash house. They wouldn't let the informant in the stash house, for instance. Is that enough for inferences? I mean, is there any case where there's been that much evidence that's been held that's not sufficient? I think all three, U.S. v. Tran, U.S. v. Sanchez Mata, and U.S. v. Estrada Macias, all have evidence that's just as strong where they've been reversed. The case is cited by the respondent. The thing that they all have in common is that they had audio tapes of the defendants talking about drug sales, and or they had several witnesses implicating those defendants in the conspiracies. Here we have none of that. We have no video, no audio, nobody implicating Mr. Calderon in the conspiracy. There's no mention of him anywhere in this investigation until they see him on the date of the arrest, which is similar to the cases that have been reversed. There's no resisting. There's no weapons. There were no drugs in the passenger compartment. It's true. It's true. And the evidence must favor the government. I mean, couldn't a rational juror find that that large quantity, sums of money, a stranger would not be allowed to open up and count? I would say a rational juror could, and they did in this case, but they also did in Tran and the other cases that I cited that have been reversed on similar facts. My time is up for now. I will see you again at rebuttal. Okay. Did you say it, Ruman? Ruman, yes. Ruman, okay. May it please the Court, I'm Celia Ruman, and I represent Mr. Ramirez-Martinez. I'd like to reserve one minute for rebuttal. This case is about whether the denial of safety valve is appropriate simply because of an allegation by the government that the information provided by the defendant concerning the offense is implausible. When the district court made no findings that it was denying application of safety valve because it found the defendant's information implausible, nor was there information that would have supported that finding. There are three points I'd like to make. The first regards the failure of the district court to make appropriate findings, and the other two relate to the government's allegations as to the reasons why the district court ruled as it did. In this case, the district court made no findings that it was denying application of the safety valve because of implausibility. Here, the district court simply stated at page 34 of the July 9th hearing, the court finds that there isn't sufficient evidence to establish safety valve. Throughout the remainder of the hearing, the district court neither discussed nor mentioned the safety valve again. It never stated that the evidence it was relying on, it never stated what evidence it was relying on in making that finding, and it never said it was making that finding based on implausibility. However, here the government is trying to bootstrap the statements the court made regarding a variance request. Counsel, may I just ask this question? Yes. As I look at the record, it is clear that the district court may not have had strict compliance with Rule 32 in terms of the safety valve, but in light of what the court said at ER 51, isn't that error, if it be error, harmless under Lyons? Could the court direct me to what on 51? I am concerned, and I agree with the government, that it doesn't make any sense that Mr. Favula would allow Mr. Martinez into the house. See where I'm looking at? Yes. I know what you're referring to. It goes on and it ends with, that's inconsistent with everything else that we have in the record. It seems to me that although it didn't strictly comply with Rule 32, that that could be considered the court's reasoning in the safety valve determination. Do you disagree with that? I do disagree, Your Honor. Where the court is talking about that implausibility issue, the government is trying to make the argument here that the evidence is it's uncommon for drug dealers to let people they don't know into the stash house. Mr. Ramirez entered the stash house. Therefore, he's minimizing his role by going in, and therefore, he's not eligible for safety valve. But the problem with that argument is the court specifically rejected that as sufficient at page 40, page 52 of the excerpt of the record, where the court says, although I certainly, as the government has some suspicion as to whether he was involved in this criminal activity previously, which is the government's argument, it is not substantial enough for me to warrant sentencing him with the guidelines. So the court considered that suspicion by the government, and it rejected it as being insufficient. But that was for a different part of the 3552, 53A factors, though, right? It was for a variance request. Right. And so similarly here, there's no evidence the court would have found it sufficient for the denial of safety valve. She never linked it back to the safety valve. And while she ---- The safety valve, aren't the issues, they could be weighted differently, could they not, than they would be in making a determination regarding a variance? Certainly, they could be weighted differently, but we have no way of knowing that. And that's one of the problems here. Mr. Ramirez-Martinez has the burden before this Court to demonstrate that it was clearly erroneous, the finding. But in order to do that, the ruling by the district court has to be clear so that Mr. Ramirez-Martinez can demonstrate that that clarity is erroneous, that it's clearly erroneous before this Court. Here, there's nothing that demonstrates that. And so that's the problem that Mr. Ramirez is faced with, And therefore, the ruling by the district court would be inherently clearly erroneous because there's no way to challenge it. The government also asserts that Mr. Ramirez's statement that he entered the house to get a drink of water somehow contradicts the assertion by the what is an unreliable confidential informant that he was invited in to count the money. Again, this is much ado about nothing. There is no contradiction here. Mr. Ramirez repeatedly admitted his role was to count the money. He didn't deny that. Going in to get a drink of water or going in to count the money, he wasn't minimizing what he was doing. He was admitting. Your client has the burden to show the judge that he deserved this safety valve departure. That's correct. And if the judge says that he has not made a full and candid disclosure, he noted, for instance, there's not sufficient evidence to establish the safety valve, the defendant knew why he was there and what he was doing. That's at 46 in the record. Why isn't that sufficient? Is the court going to be required to make more detailed findings than he would about the acceptance of responsibility under your theory? Well, I think where there's a dispute as to whether it's appropriate, the court does have an obligation to make the record somewhat clearer. Here, there's nothing before the court. There was no dispute regarding the issue of acceptance of responsibility. The court accepted that he was being honest in his admissions to the court. And, therefore, it's when there's a dispute that the court, I think, does have an obligation to make at least some finding that would justify the ruling it was making. I see that my time is up, so unless you have additional questions. Very well. Now, just for housekeeping and to hold the clock here, when you and Ms. Loveland get up again, are you going to split the remaining time or are you ‑‑ she left a little bit more than her allotted time. What are you going to do? Split it in half or what? Yeah, split it in half. Okay. Okay. Very good. All right. We'll now hear from the government. Mr. Morse, right? Your Honors, may it please the Court. My name is Jim Morse for the United States. One piece of information I would like to clarify is the first counsel for Mr. The evidence at trial said that they weren't sure, that neither the confidential source nor the surveilling agents were able to tell who the passenger or who the driver of the vehicle was. There was a statement at the sentencing for Mr. Ramirez-Martinez that he had been picked up by Mr. Nava Calderon, but that was not evidence at trial. Judge Smith asked where is the innocent explanation. And I would just posit to the Court that that is the wrong question to be asking. Under Nevelson, the other line of cases, it isn't whether there is any reasonable or innocent explanation, but it is whether the jury could properly or reasonably infer the guilty explanation in this case. And the guilty explanation in this case is very easily inferred from the evidence presented. All the cases that defendant relies upon, and she's talked about the cases involving passengers and cars where there were drugs, all lack the most important piece of evidence that we see here in this case, which is that this defendant wasn't just the passenger. He got out and counted the money. And not only did he get out and count the money, but while he was doing that, the other co-conspirator, Mr. Ramirez-Martinez, stopped the confidential source and said, no, no, don't get any closer. We're, and it was we're, not I'm, we are taking care of this. We're counting right here. From that evidence alone, a reasonable jury could find this defendant guilty of participation in the conspiracy. And I'm going to combine the conspiracy count with the possession count. I might say that you say that a wrong question as to whether there was an innocent reason. That's a pretty good question, because if there is no innocent reason, that's your, it helps your case a lot. You know, Your Honor, thank you for that, because I probably shouldn't have criticized Judge Smith. Well, yeah, so you said it was a wrong question, and I think it was a good question. It is a good question, because you're right, Your Honor, in this case, not only, although we don't need to disprove every reasonable explanation, and Neville says that quite clearly in the recent Embank case, our Embank case, there is no innocent explanation in this case. There is no mere presence argument that can be made in this case, although defense counsel at trial, both at the Rule 29 part and during closing argument, tried dramatically to argue mere presence. It was impossible in this case, because there is no innocent explanation. As I said, the mere statement of the co-conspirator and the fact he was counting the money is sufficient, but there was quite a lot more evidence that was presented in this case. As the court noted, the drugs weren't there when the CS, when the confidential source arrived, and he had to call to order up the drugs. Mr. Fevella called to order up the drugs. During that time, he told the CS that these were serious people. They wouldn't let him down. He indicated there was more than one person that he was expecting associated with this car, not an individual. He also told him it was a pretty white car, and when the white car backed into Mr. Fevella's house, he told the CS that these are the guys that are here. As the court noted, there had been three previous, I believe, drug transactions, and the CS had never been allowed in Mr. Fevella's home. He was not allowed in during this deal either. There was also an undercover agent who had been previously involved who was not allowed into the home. These men were here, counted outside. This defendant counted the money outside for approximately two minutes, according to the testimony from the CS and from the surveilling agents, and then they went inside the house. And then when they entered the house and seized, there was $76,000 that this defendant had access to. Looking at the totality of the circumstances, there is no innocent explanation. There is no mere presence. This defendant was properly found guilty by the jury because they drew the proper inferences from the testimony. One other point is the testimony regarding the house, there was expert testimony admitted from agents who had made a career out of investigating these types of cases, that unaffiliated people are not allowed into these stash houses. So that was another thing the jury was properly not only taught about during the trial, but could properly consider and draw the inference from. Moving to Mr. Ramirez-Martinez, again, not to pick on Judge Smith, I disagree that there wasn't compliance with Rule 32. And I think what the court, the district court, or what this court needs to consider this court. What I said was even if you assume there was. I've got to be more deferential. I'm sorry. There were two sentencing hearings. And at the first sentencing hearing, the district court laid it out quite clearly what was at issue here. And she said, the other four prongs are taken care of, but it's the fifth prong that gives her trouble. And she said, and this is at the supplemental extra directed 07, talking to defense counsel, it is your client's burden where the government objects to establish a downward adjustment as appropriate, not only for the minimal role, but acceptance, responsibility, and the safety valve. What I have is the testimony, the evidence that was presented at trial. Then I also have your client's statement in which I have taken into consideration, but it is not under oath, and it does differ in substantial part with the evidence at trial. Later at that same hearing, she went on to say that the factual predicate that the government had provided was consistent with her recollection of what the trial testimony was, and was inconsistent, and she mentioned specifically the evidence like that this particular defendant, Mr. Ramirez-Martinez, had held the defendant back, held the confidential source back. And she ended by saying, so that the evidence under oath at trial stands substantially different or opposite from what your client and you have offered the court. Then she gave defense the opportunity to put her client on the stand to try and overcome these specific findings, that the evidence presented at trial was inconsistent with the evidence that, or his argument regarding what his role in the offense was. Defense took that opportunity, and they had a second sentencing hearing where the government presented additional evidence and the court presented, or the defense presented additional evidence. And at the end of that hearing, the court said, referring back to the earlier hearing, said, you have not met your burden. In other words, I found before that there was substantial inconsistencies that I didn't take the client's version as being accurate. I've listened now to your client under oath make these statements, and I still find that he failed to meet the fifth prong, that he has not truthfully provided all of his evidence regarding this offense. The fact that she didn't say magic words at that point ignores the prior statement where she's put the whole hearing, this whole second sentencing hearing, into context. Moreover, the, again, looking at the... What was not said that should have been said? In my opinion, Your Honor, nothing. This judge said everything she needed to say. No. What the defendant, what should the defendant have disclosed that the defendant did not? Well, the things that the court focused upon, which I think were the, and that the government focused upon, both in its pleadings and then at the hearing, was that his version of events did not make sense, that his version that he was picked up just minutes before this deal had happened at a Home Depot, was not told about it until he was on his way, that he got there and just barely helped with the counting of the money and then was invited inside for a drink, were inconsistent with the evidence that the court had heard about the drug trafficking organization, were inconsistent with the factual basis that Mr. Fevella had provided in his plea agreement, and were inconsistent with the testimony provided at the sentencing by Agent Moran. And then the court said that, I mean, said later in the hearing, and maybe it would have been nicer if the court had said it right there, we're finding I don't find you met your factual or met your burden in establishing the safety valve, and she'd said why. But there is no requirement that the court say here's a list of the lies I think you've told, or the things you haven't told us that you should have. The cases cited by defense Edwards and White out of the Fifth and First Circuits don't stand for that proposition either. In those cases, the courts of appeal looked at the combined, all the evidence presented at trial and said there was enough here for the court to find that the defendant didn't establish his burden in those cases. They talk about other cases where the court relied solely upon the government's objection or the statements in the pre-sentence report. I'm sorry. But this case doesn't do that because the court did consider other evidence and actually gave defense the opportunity to present evidence and the government a chance to present evidence at sentencing. So the court did everything that you would ask a court to do in this type of case. Do you think the court really complied with Rule 32? This circuit is held in Houston. The strict compliance is necessary in 32. You have to make express or explicit findings. I do, Your Honor, because at the first hearing she said his version of events is inconsistent with everything that I have in this record and gave him the opportunity to come back at the second hearing. The second hearing he presented the evidence and she said I found you've not met your burden. In other words, referring back to the fact that she already had said you have not presented everything or you have not provided a truthful statement of your involvement in this offense. If I could have just a moment, check my notes to make sure I haven't forgotten anything. As the court noted earlier, she said later at the second sentencing hearing, now it wasn't necessarily at the exact same time where she talked about the safety valve, but she said that what the defendant said was inconsistent with everything else we have in the record. There is no magic words that are required under Rule 32. But that statement certainly shows that the court did not believe and there is sufficient evidence in the record to sustain the court's finding. The burden is on the defendant to establish probable cause at the sentencing hearing and it is this court's burden to only overrule that if the decision is clearly erroneous. And looking at the entire record, it is not clearly erroneous. If there are no more questions, I will submit at this time. I think there are none. Thank you. Thank you, counsel. So I guess Ms. Hovland coming first. And we have, we'll round it up to 310. So you each have a minute and 55 seconds or something like that. Thank you, Your Honor. I'm glad that counsel brought up the Neville's case. That case at page 1167 says that even though the evidence is construed in the light most favorable to the government, it may still be supportive of innocence. And the specific example it gives is if all the elements are not proven beyond a reasonable doubt. I would submit that in this case the elements of conspiracy and agreement and the intent to go along with this distribution of meth was not proven beyond a reasonable doubt. Even though the conspiracy was established, proving the slight connection does not mean that the burden of proving that connection is slight. And I believe that that's what we have here. The only thing that distinguishes this case from the other cases that have been reversed is the confidential informant's testimony saying that he saw Mr. Calderon counting the money for two minutes. But in this case, Ms. Hovland, isn't it the burden here is you have to show that no juror could have found this. How do you meet that burden here? Whatever happened in the other cases because you've got individual situations and individual cases. Where do you show that here? Where in each of those cases the jury found it and in each of the cases the court reversed it. So you can't just assume that your jury was rational because cases get reversed like this all the time. And the cases that I've cited are analogous to this case except for that one point. And now I was interested in the whole innocent explanation concept. Martinez was the older gentleman in the car. We don't know when Favula was calling who he was talking to on the phone. We don't know if Martinez brought his son or his nephew with him, how they're related. There was no testimony that Mr. Calderon was related to this conspiracy. I was amused by this concept because I grew up in the south side of Chicago. My father was a bookmaker and a drug dealer. He brought me with him all the time. I saw all sorts of things. But I wasn't a conspirator. So there is an innocent explanation just because you can't see it. Thank you very much. We agree that you are not guilty. Thank you. I'll just make one point. The government ended by saying that the district court said her finding was because the defendant's information was inconsistent with everything else that's in the record. That's clearly erroneous. Nothing that he said is inconsistent with everything in the record. Indeed, it is consistent with what the other information is, including Mr. Favula's plea agreement, which he specifically considered, I believe, on page 32. His recitation of what happened is entirely consistent. Therefore, the district court's ruling would be considered clearly erroneous, and I'll submit. Thanks to both counsel. Do you have a question? Okay, thanks to both counsel for or actually all three counsel for their argument. In this case, U.S. versus Nava Calderon and Ramirez-Martinez is submitted.
judges: Hogan, Hug, Smith M.